**Stephen V. Piucci OSB No. 821056**
**Joseph E. Piucci OSB No. 135325**
Piucci Law, LLC
900 SW 13th Avenue, Suite 200
Portland, Oregon 97205
Telephone: 503-228-7385
Facsimile: 503-228-2571
E-mail: steve@piucci.com
joe@piucci.com

**Drake Aehegma, OSB No. 132905**
Drake Aehegma Attorney at Law LLC
PO Box 8404
Portland, OR, 97207
Telephone: 503-208-5717
Facsimile: 503-914-1472
E-mail: drake@aehegmalaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **THE ESTATE OF RICHARD JASON FORREST,** Van Loo Fiduciary Services, LLC, Personal Representative,<br><br>Plaintiff,<br><br>v.<br><br>**MULTNOMAH COUNTY**, a political subdivision of the state of Oregon; **MICHAEL REESE**, Multnomah County Sheriff, **JOHN DOES 1-10,** and **JANES DOES 1-10,**<br><br>Defendants. | Case No.<br><br>COMPLAINT<br><br>***VIOLATIONS OF CIVIL RIGHTS (28 U.S.C. § 1983) and SUPPLEMENTAL STATE CLAIMS***<br><br>**JURY DEMAND** |

Page 1 - **Complaint**

## INTRODUCTION

1. On April 29, 2019, Richard Jason Forrest, then 37 years old, was booked into the Multnomah County Detention Center by the Multnomah County Sheriff's Department. At the time of his booking, Mr. Forrest was under the supervision of the Multnomah County Department of Community Justice. After his booking, Mr. Forrest was soon transferred to Multnomah County Inverness Jail ("Inverness Jail").

2. Prior to his arrest and booking, Mr. Forrest struggled with drug addiction. He was taken into custody, in part, to get clean before entering a treatment program.

3. Mr. Forrest had a history of asthma and had been provided an asthma inhaler by Multnomah County.

4. Mr. Forrest remained in the custody of the Multnomah County Sheriff at Inverness Jail for the three months from April 29, 2019 until his death on July 25, 2019.

5. On July 25, 2019 Mr. Forrest requested medical help from the staff at Inverness Jail. Jail Staff were informed that Mr. Forrest was in the midst of a drug overdose, and while waiting for medical help, Mr. Forrest collapsed to the ground.

6. Emergency Medical Services arrived and took Mr. Forrest to Adventist Hospital where he was pronounced dead.

7. Dr. Michelle Stauffenberg, the county medical examiner, performed an autopsy on July 26, 2019. Dr. Stauffenberg wrote: "It is my opinion that Richard Forrest… died as a result of the combined effects of the heroin and methamphetamine."

8. Mr. Forrest is survived by his wife and by his minor son.

9. In the aftermath of Mr. Forrest's death, at least 12 individuals were indicted for their involvement in smuggling drugs into the jail.

10. To date, no independent investigation has occurred.

**JURISDICTION AND VENUE**

11. This action arises under the constitution and laws of the United States and jurisdiction is based on 28 USC § 1331 and 28 USC § 1343(a). This Court has pendant jurisdiction of the state law negligence claims pursuant to 28 USC § 1367.

**PARTIES**

12. Plaintiff Van Loo Fiduciary Services, LLC is the duly appointed personal representative of the Estate of Richard Jason Forrest, deceased. Van Loo Fiduciary Services, LLC is on Oregon Limited Liability Company and its principal, Cindy Van Loo, is a citizen and resident of the State of Oregon.

13. Richard Jason Forrest, deceased, ("Forrest") was born on November 20th, 1981 in Portland, Oregon. He was the father of a minor son. At the time of his death, Richard Forrest was a citizen and resident of the State of Oregon. At all times herein pertinent, Richard Forrest was a detainee in the Multnomah County Inverness Jail.

14. Multnomah County is an Oregon county. Multnomah County operates a jail, known as Inverness Jail. Multnomah County has a duty to provide for the health and safety of all detainees and persons convicted of crimes held at Inverness Jail.

15. At all material times, defendant Michael Reese was Sheriff of Multnomah County. At all times herein pertinent, defendant Reese was acting under color of state law. Based upon information and belief, defendant Reese is a citizen and resident of the State of Oregon.

16. At all material times, defendants John Does 1-10 and Jane Does 1-10 are Multnomah County employees, officers, administrators, and supervisors responsible for the jail security, inmate health and safety, detection of contraband, or the provision of medical

services, or enactment and implementation of policies, practices, and customs relating to jail security, inmate health and safety, detection of contraband, and the delivery of health care at Inverness jail. At all times herein pertinent, defendants John Does 1-10 and Jane Does 1-10 were acting under color of state law.

**FACTUAL ALLEGATIONS**

17. Multnomah County's Inverness Jail houses pretrial detainees and persons convicted of crimes. Multnomah County is obligated by state and federal law to provide for the health and safety of all persons lodged in the Inverness Jail, to prohibit the and to provide medical and mental health care for the same.

18. On or about February of 2018, Forrest was released from the custody of the Oregon Department of Corrections and placed on Post-Prison Supervision with the Multnomah County Department of Community Justice.

19. On or about April 28th, 2020 decedent's wife, Chrystal Forrest, called decedent's Post-Prison Supervision Officer with the Multnomah County Department of Community Justice and described that Forrest was spiraling downward with his addiction to heroin and methamphetamine. Ms. Forrest asked decedent's Post-Prison Supervision Officer to arrest her husband in an effort to get him clean, into treatment, and to save his life. The Post-Prison Supervision Officer then issued a detainer and warrant for Forrest's arrest.

20. On April 29th, 2019, Forrest was arrested and booked into the Multnomah County Detention Center. He was soon transferred to Inverness Jail. Forrest was assigned to Inverness Jail Dorm 9, which houses inmates who participate in work crews outside of the jail.

//

21. Forrest Mr. had a history of asthma. Multnomah County was aware of his diagnosis and had provided him with an inhaler while he was in custody.

22. In 2019, after Forrest's booking and prior to his death, 12 or more individuals engaged in a criminal conspiracy to smuggle controlled substances including heroin and methamphetamine into Inverness Jail. The conspiracy, which was successful, involved dropping drugs at specific locations on or near the jail property and arranging for inmates on the work crew pick up packages and bring them into the jail.

23. At the time of Forrest's booking though his death, Multnomah County did not possess or utilize body scanners for the purpose of detecting drugs brought into the jail. On information and belief, investigators and the Multnomah County Corrections Deputy Association had recommended that Multnomah County obtain and utilize body scanners following the four March 2015 fentanyl overdoses within the jail system that resulted in one inmate death.

24. On information and belief, the 2019 Inverness Jail drug deliveries were arranged using jail telephones and paid for using the jail's system of inmate accounts.

25. On July 25th, 2019, Forrest ingested, inhaled, or injected heroin and methamphetamine obtained while in custody at Inverness Jail. Prior to his death, Forrest reported trouble breathing to jail deputies and was overheard saying "I can't breathe."

26. Jail deputies contacted medical staff and a nurse came to see Forrest. Soon after, Forrest collapsed.

27. On information and belief, following Forrest's collapse, a defibrillator was brought in but did not function due to battery problems. Forrest was later taken to Adventist Health Portland, where he was declared dead.

28. The Multnomah County medical examiner performed an autopsy on July 26, 2019, finding that Forrest "died as a result of the combined effects of the heroin and methamphetamine."

## MULTNOMAH COUNTY'S HISTORY OF DELIBERATE INDIFFERENCE TO THE HEALTH AND SAFETY OF JAIL INMATES

29. On April 2, 2003, Nick Baccelleri died at Inverness as a result of a methadone overdose. The methadone was provided by the medical staff at the jail. Multnomah County agreed to pay $200,000 to settle a lawsuit brought by Mr. Baccelleri's family.

30. On October 1, 2004, Anthony Delarosa died at either MCDC or Inverness as a result of heroin withdrawal. On information and belief, he vomited and slipped into a withdrawal coma in his cell. Multnomah County agreed to pay $200,000 to settle a lawsuit brought by Mr. Delarosa's family.

31. On September 17, 2006, James Chasse died of blunt force trauma after being booked into and then released from MCDC. The jail staff did not call an ambulance for Mr. Chasse, who died during transport to a local hospital in a deputy's car. On information and belief, Multnomah County agreed to pay $925,000 to settle a lawsuit brought by Mr. Chasse's family.

32. On January 4, 2008, Holly Jean Casey died at MCDC of pneumonia after repeatedly seeking medical help. On information and belief, Multnomah County and other defendants agreed to pay $905,000 to settle a lawsuit brought by Ms. Casey's family, and Multnomah County fired one of the nurses who was working in the jail.

33. In March 2008, the Multnomah County District Attorney's Office issued a memo detailing the results of its investigation into the deaths of Jody Gilbert Norman and

Holly Jean Casey (the "2008 DA's Office Memo"). The 2008 DA's Office Memo stated that their deaths "seem to raise serious questions about inmate management and health care practices within the Multnomah County corrections system and the level of health services."

34. In March 2015, an inmate arrested on federal drug trafficking charges, Channing Lacey, smuggled drugs into the jail within her body. The US Department of Justice describes what happened as a consequence:

> Three inmates overdosed on the fentanyl between March 7 and 9, 2015. All three victims required immediate life-saving medical attention and the administration of Narcan to reverse the overdose and prevent their death. On March 21, 2015, another inmate overdosed on the fentanyl and died as a result.[1]

35. On information and belief, an investigation into the March 2015 overdoses and death recommended that Multnomah County Sheriff's Office obtain and utilize a body scanner to prevent the smuggling of drugs into its jails, and to prevent future inmate overdoses and deaths. At the time of Forrest's death in July of 2019, Multnomah County still did not possess or utilize a body scanner.

36. On December 31, 2015, William Coupchiak died of a drug overdose at MCDC. On July 25, 2017, the family of Mr. Coupchiak filed a lawsuit against Multnomah County and other defendants. In September 2018, Multnomah County agreed to pay $195,000 to settle that lawsuit.

37. In January 2017, Multnomah County received the Corrections Grand Jury 2016 Report (the "2016 GJ Report"). Here are some of the overview findings of the 2016 GJ Report:

---

[1] https://www.justice.gov/usao-or/pr/portland-woman-sentenced-135-months-prison-distributing-fentanyl-inside-multnomah-county

Page 7 - **Complaint**

a. "The number of deputies on staff may be insufficient. There is no current study of the appropriate number of deputies needed to support Multnomah County correctional facilities. The 2006 Post Factor Study indicated that 440 deputies were needed (38 more than currently budgeted). However, this report neither reflects current policies nor the current number of inmates/available beds."

b. "Some deputies are working multiple straight days of 16 hour shifts. While much of this is certainly voluntary overtime, the Corrections Grand Jury is concerned that working extremely long hours over multiple days is not good for the health of the employees and could put both employees and inmates in danger."

c. "At MCDC and [Inverness], the medical clinics hours are limited to five hours per day due to deputy availability, although the staff is there longer. Open hours could be expanded and more inmates served if additional deputy time was available to provide security. Many services that should be provided in a clinic setting have to be brought to the inmates in the dorms or cells."

38. On August 11, 2017 Dee Glassman was booked into Multnomah County Detention Center. Ms. Glassmann appeared to be under the influence of drugs and alcohol and was "[a]t risk for withdrawal." Approximately 34 hours later, Ms. Glassmann was found dead in her cell. Ms. Glassman's estate has filed suit.

39. In June and July of 2020, Multnomah County failed to protect inmates at the Multnomah County Detention Center from repeated and horrific exposure to tear gas through the ventilation system of the jail.

//

//

# FIRST CLAIM FOR RELIEF

## Civil Rights Claim – 42 USC 1983 – 8th and 14th Amendment

40. Plaintiff realleges and incorporates each previous paragraph.

41. Forrest, as a jail inmate, was entitled to be provided the essential aspects of a safe, sanitary and humane confinement including protection from harms and threats to his safety and security under the laws of the State of Oregon and the 8th and 14th Amendments to the United States Constitution.

42. Defendants were deliberately indifferent to Richard Jason Forrest's health, safety, serious medical needs, and to his rights under the Eighth and/or Fourteenth Amendments of the U.S. Constitution in one or more of the following particulars:

    a. In failing to maintain a safe jail free of illicit, illegal and dangerous substances;

    b. In failing to prevent heroin, methamphetamine, and other controlled substances from entering the jail;

    c. In failing to find and remove heroin, methamphetamine, and other controlled substances from the jail;

    d. In failing to enforce policies and procedures that would prevent heroin, methamphetamine, and other controlled substances from being accessible to inmates;

    e. In failing to notice that inmates on the work crew were picking up packages of controlled substances left on the Inverness Jail property and bringing them into the jail;

    f. In failing to adequately search inmates re-entering Inverness Jail from the work crew;

    g. In failing to monitor the jail's telephones and system of inmate accounts;

    h. In failing to respond properly to Richard Forrest's serious medical needs before, during, and after his overdose;

    i. In failing to provide Richard Forrest with prompt and adequate medical attention; and

    j. In failing to transfer Richard Forrest to a hospital in an adequate amount of time.

43. As a direct result of the actions and inactions of defendants, as set forth in the paragraph above, Forrest endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he died. Forrest's wife and son have been denied his love, society and companionship. Mr. Forrest's estate incurred expenses. Mr. Forrest's estate is entitled to economic damages in an amount to be determined at trial and noneconomic damages in the sum of $10,000,000.

44. Defendants' conduct was well defined by law and each defendant knew or reasonably should have known that their conduct was not only well below the standard prescribed by law herein but was illegal *per se*.

45. Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action pursuant to 42 USC § 1988.

## SECOND CLAIM FOR RELIEF

**Civil Rights Claim – 42 USC 1983 – 8th and 14th Amendment -** *Monell*

*Defendant Multnomah County*

46. Plaintiff realleges and incorporates each previous paragraph.

47. The moving forces that resulted in the deprivation of the Eighth and/or Fourteenth Amendment rights of Richard Forrest, his wife and his son were the following policies, customs or practices of Multnomah County:

    a. A policy, custom or practice of failing to keep illegal and dangerous substances out of inverness jail;

    b. A policy, custom or practice of failing to respond to illegal drugs in the jails;

    c. A policy, custom or practice of providing insufficient training to employees responsible keeping illegal and dangerous substances out of the jails;

    d. A policy, custom or practice of providing insufficient equipment to enable to keep illegal and dangerous substances out of the jails;

    k. A policy, custom, or practice of failing to monitor the jail's telephones and system of inmate accounts;

    e. A policy, custom or practice of failing to hold employees responsible for illegal substances being brought into the jails;

    f. A policy, custom or practice of providing insufficient support to employees responsible for keeping inmates safe;

    g. A policy, custom or practice of failing to respond to medical emergencies in a timely fashion;

    h. A policy, custom or practice of providing insufficient medical coverage for Multnomah County inmates;

    i. A policy, custom or practice of failing to provide adequate additional and recovery services to inmates struggling with addiction;

//

j. A policy, custom or practice of failing to ensure that employees of the Multnomah County had proper training in responding to the serious medical needs of jail inmates;

k. A policy, custom or practice of providing insufficient deputy coverage for Multnomah County inmates;

l. A policy, custom or practice of hiring personnel indifferent to the psychological and medical needs of Multnomah County inmates;

m. A policy, custom or practice of failing to ensure that employees of the Multnomah County had proper training in responding to inmates experiencing drug or alcohol overdose or withdrawal;

n. A policy, custom or practice of failing to ensure that emergency medical equipment was ready and in working order; and

o. A policy, custom or practice of providing insufficient training to deputies and medical providers.

48. The policies of Multnomah County posed a substantial risk of causing substantial harm to Multnomah County inmates, and Multnomah County was aware of the risk.

49. As a direct result of the policies, customs or practices of Multnomah County and the Multnomah County Sheriff's Office, Richard Forrest endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he died. Mr. Forrest's wife and son have been denied his love, society and companionship. Mr. Forrest's estate incurred medical expenses and funeral expenses. Mr. Forrest's estate is entitled to economic damages in an amount to be determined at trial and noneconomic damages in the sum of $10,000,000.

50. Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action pursuant to 42 USC § 1988.

### THIRD CLAIM FOR RELIEF

(Negligence – Wrongful Death)

51. Plaintiff re-alleges and incorporates each previous paragraph.

52. Defendants Multnomah County, acting by and through its employees and agents, Reese, John Does 1-10 and Jane Does 1-10 were negligent in one or more of the following particulars:

    a. In failing to maintain a safe jail free of illicit, illegal and dangerous substances;

    b. In failing to prevent heroin, methamphetamine, and other controlled substances from entering the jail

    c. In failing to find and remove heroin, methamphetamine, and other controlled substances from the jail;

    d. In failing to enforce policies and procedures that would prevent heroin, methamphetamine, and other controlled substances from being accessible to inmates;

    e. In failing to accept recommendations to obtain and utilize body scanners following the 2015 fentanyl deaths within the jail system;

    f. In failing to timely obtain body scanners for use with Inverness work crews;

    g. In failing to monitor the jail's telephones and system of inmate accounts;

    h. In failing to notice that inmates on the work crew were picking up packages of controlled substances left on the Inverness Jail property and bringing them into the jail;

i. In failing to adequately search inmates re-entering Inverness Jail from the work crew;

j. In failing to respond properly to the fact that Richard Forrest was overdosing from drugs;

k. In failing to provide Richard Forrest with prompt and adequate medical attention;

l. In failing to ensure that all medical equipment, including defibrillators, was readily available and in good working order;

m. In failing to promptly transfer Richard Forrest from Inverness Jail to a hospital for diagnosis and treatment of his serious medical needs;

n. In providing insufficient medical coverage for Multnomah County inmates;

o. In providing insufficient deputy coverage for Multnomah County inmates;

p. In hiring personnel indifferent to the psychological and medical needs of Multnomah County inmates;

q. In failing to ensure that employees of Multnomah County had proper training in responding to the serious medical needs of jail inmates;

r. In failing to ensure that employees of the Multnomah County had proper training in responding to inmates experiencing drug or alcohol overdose or withdrawal; and

s. In failing to ensure that employees of the Multnomah County had proper training in keeping dangerous and illegal substances out of the jails.

53. As a direct result of the actions and inactions of Multnomah County, acting by and through its employees and agents, Reese, John Does 1-10, and Jane Does 1-10, Richard Forrest endured and suffered severe physical and emotional distress, his medical

condition was exacerbated, and he died. Richard Forrest's wife and son have been denied his love, society and companionship. Richard Forrest's estate incurred medical expenses and funeral expenses. Forrest's estate is entitled to economic damages in an amount to be determined at trial and noneconomic damages in the sum of $10,000,000.

54. Notice pursuant to the Oregon Tort Claims Act was given to defendant Multnomah County within the time prescribed by law.

## FOURTH CLAIM FOR RELIEF

### Civil Rights Claim - 14th Amendment - 42 USC § 1983

<u>Failure to Supervise</u>: Defendant Reese, Supervisor Doe Defendants

55. Plaintiff re-alleges all previous paragraphs as if more fully set forth herein.

56. The constitutional deprivations suffered by Plaintiff are the proximate and direct cause of a non-interested, indifferent and willfully ignorant supervisory practice by the named defendants. The supervisors have a constitutional duty to protect detainees and inmates and to provide them with a safe and humane condition of confinement including the right to be free from heroin, methamphetamine, and other controlled substances.

57. The duty is enhanced when the inmate population is especially vulnerable, as here, with a high incidence of inmates suffering from drug addiction and many, including Forrest, specifically waiting to enter a drug treatment program.

58. Defendants Reese, John Does 1-10 and Jane Does 1-10, in their supervisory capacities, were aware of the policies, customs or practices as alleged above, and were aware that said policies, customs or practices created a substantial risk of causing substantial harm to Multnomah County detainees and inmates by endangering their physical safety and their

medical and mental health needs. Despite that knowledge, said supervisors allowed, approved of and ratified said policies, customs or practices.

59. The supervisory staff failed in the following particulars:

   a. Defendants failed to accept recommendations to obtain and utilize body scanners following the 2015 fentanyl deaths within the jail system; and

   b. Defendants failed to timely obtain body scanners for use with Inverness work crews;

60. As a direct result of the actions and inactions of defendants Reese and the supervisory Doe defendants, heroin and meth were brought into the jail, available for inmates to use within the jail, and Forrest overdosed and died. Forrest's wife and son have been denied his love, society and companionship. Forrest's estate and his wife and son are entitled to compensatory damages in the sum of $10,000,000.

61. Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action pursuant to 42 USC § 1988.

## FIFTH CLAIM FOR RELIEF

### Gross Negligence/Reckless Misconduct - Wrongful Death

62. Richard Forrest's estate realleges and incorporates herein as though set forth in full each paragraph above.

63. Defendant Multnomah County, by and through its employees acting within the scope of their employment, Reese, and John Doe 1-10 and Jane Doe 1-10 were grossly negligent and acted with reckless misconduct in one or more of the following particulars:

   a. In failing to prevent heroin, methamphetamine, and other controlled substances from entering the jail;

b. In failing to adopt and enforce policies and procedures that would prevent heroin, methamphetamine, and other controlled substances from being accessible to inmates;

c. In failing to accept recommendations to obtain and utilize body scanners following the 2015 fentanyl deaths within the jail system;

d. In failing to timely obtain body scanners for use with Inverness work crews;

e. In failing to notice that inmates on the work crew were picking up packages of controlled substances left on the Inverness Jail property and bringing them into the jail;

f. In failing to adequately search inmates re-entering Inverness Jail from the work crew;

g. In failing to monitor the jail's telephones and system of inmate accounts; and

h. In failing to respond properly to the fact that Richard Forrest was overdosing from drugs that he obtained and consumed while in jail waiting for admission to a drug treatment facility.

64. As a direct result of the misconduct of defendant Multnomah County, Richard Forrest endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he died. His wife son have been denied his love, society and companionship. Mr. Forrest's estate and his wife son are entitled to compensatory damages in the sum of $10,000,000.

65. The actions of defendant Multnomah County were grossly negligent, were recklessly indifferent to Richard Forrest's civil rights, and callously disregarded his physical safety.

66. Plaintiff reserves the right to amend this complaint pursuant to ORS 31.725.

Page 17 - **Complaint**

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for a judgment as follows:

1. **On the First Claim for Relief,** for judgment against defendants Reese, John Does 1-10, and Jane Does 1-10 and each of them, for:

    A. Economic damages in an amount to be determined at trial; and

    B. Noneconomic damages the sum of $10,000,000; and

    C. For necessarily and reasonably incurred costs and attorney fees.

2. **On the Second Claim for Relief,** for judgment against defendant Multnomah County for:

    A. Economic damages in an amount to be determined at trial; and

    B. Noneconomic damages the sum of $10,000,000; and

    C. For necessarily and reasonably incurred costs and attorney fees.

3. **On the Third Claim for Relief,** for judgment against defendant Multnomah County, Reese, John Does 1-10, and Jane Does 1-10 and each of them, for:

    A. Economic damages in an amount to be determined at trial; and

    B. Noneconomic damages the sum of $10,000,000.

4. **On the Fourth Claim for Relief,** for judgment against defendants Reese, John Does 1-10, and Jane Does 1-10 and each of them, for:

    A. Economic damages in an amount to be determined at trial; and

    B. Noneconomic damages the sum of $10,000,000; and

    C. For necessarily and reasonably incurred costs and attorney fees.

5. **On the Fifth Claim for Relief,** for judgment against defendant Multnomah County, Reese, John Does 1-10, and Jane Does 1-10 and each of them, for:

A. Economic damages in an amount to be determined at trial; and

B. Noneconomic damages the sum of $10,000,000.

Dated : September 29, 2020

By,

/s/ *Drake Aehegma*_____
Drake Aehegma, OSB #132905
Email: drake@aehegmalaw.com
Drake Aehegma, Attorney at Law, LLC
PO Box 8404
Portland, OR 97207
Telephone: (503) 208-5717
Fax: (503)914-1472

/s/ *Joe Piucci* _____
Joseph E. Piucci, OSB No. 135325
E-mail: joe@piucci.com
Piucci Law, LLC
900 SW 13th Avenue, Suite 200
Portland, Oregon 97205
Telephone: 503-228-7385
Facsimile: 503-228-2571

PLAINTIFF HEREBY DEMANDS A JURY TRIAL