**Stephen Piucci,** OSB # 821056
**Joe Piucci,** OSB # 135325
PIUCCI LAW LLC
900 SW 13th Ave., Ste. 200
Portland, OR 97205
Tel: 503-228-7385
Fax: 503-228-2571

**Drake Aehegma,** OSB # 132905
Drake Aehegma Attorney at Law LLC
PO Box 8404
Portland, OR, 97207
Tel: 503-208-5717
Fax: 503-914-1472

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **THE ESTATE OF RICHARD JASON FORREST,** Van Loo Fiduciary Services, LLC, Personal Representative, | Case No. 3:20-cv-01689-AR |
| Plaintiff, | |
| v. | **MOTION TO REOPEN DISCOVERY** |
| **MULTNOMAH COUNTY**, a political subdivision of the state of Oregon; **MICHAEL REESE**, Multnomah County Sheriff, **CAMILLE VALBERG, KOH METEA, JAMI WHEELER, JACOB DIAMOND, STEVEN ALEXANDER,** AND **JEFFREY WHEELER,** acting in concert and in their individual capacities, | |
| Defendants. | |

Page 1 - MOTION TO REOPEN DISCOVERY

**PIUCCI LAW**
**900 SW 13th Ave. Suite 200**
**Portland, Oregon 97205**
**Telephone: (503) 228-7385**
**Fax: (503) 228-2571**

## L.R. 7.1(a) CERTIFICATION

The parties have conferred extensively since July 11th, 2023, sending dozens of emails, holding three phone conferences, and working together to prepare a Joint Statement for the court summarizing the discovery dispute in advance of the telephonic hearing on Tuesday August 29th, 2023. The parties come to the court having made a good faith effort to resolve this dispute.[1]

### I. MOTION

Pursuant to Federal Rules of Civil Procedure 16 and 26, The Estate of Richard Jason Forrest ("Plaintiff") respectfully moves this Court for an order reopening discovery for the purpose of conducting limited discovery into the recent deaths within Multnomah County jails as outlined below. This motion is supported by the Declaration of Joe Piucci, filed herewith.

### II. FACTUAL BACKGROUND

This case involves the July 25th, 2019 death of Richard Forrest at Inverness Jail from the toxic combination of heroin and methamphetamine, drugs which he obtained and consumed within the jail. As alleged in Plaintiff's First Amended Complaint, drugs were rampantly available within the jail, and adults in custody ("AICs") had unfettered access to the drugs.[2]

Discovery previously concluded in October of 2022, and Defendants moved for Summary Judgment on June 17th, 2023.[3] One of the headings in Defendants' Motion reads, "Multnomah County's Low Jail Mortality Rates." [4]

From May 2nd, 2023 through August 1st, 2023, six adults in custody ("AICs") died within Multnomah County Jails. Three have died since Defendants filed their Motion. Per Multnomah

---

[1] Piucci Decl, ¶ 3.
[2] ECF-17, ¶¶ 37-44.
[3] ECF-59.
[4] *Id.*, p. 13.

Page 2 -   **MOTION TO REOPEN DISCOVERY**

PIUCCI LAW
900 SW 13th Ave. Suite 200
Portland, Oregon 97205
Telephone: (503) 228-7385
Fax: (503) 228-2571

County Sheriff Nicole Morrisey O'Donnell ("the Sheriff"), "[e]arly indications suggest some of the deaths may be drug-related." The Sheriff also announced that a 2022 death had been due to an "acute cocaine overdose." [5]

Defendants have since produced publicly released medical examiner Reports for the May 13th and June 16th deaths. For the June 16th death, which was reported as a death by suicide, illicit drugs were present within the deceased's cell.[6]

On August 9th, the Sheriff requested that Oregon State Police ("OSP") conduct an independent review of all 2023 in-custody death investigations and reported that "the National Institute of Corrections ("NIC") accepted our request to provide an independent assessment of our facilities, operations, policies, and services." [7]

Plaintiff has sought clarity from Defendants regarding the scope and timing of the OSP and NIC assessments. For OSP, Defendants have clarified that it will not be conducting its own assessment, but rather will review MCSO's own investigations into each death and identify additional investigative steps that MCSO should take.[8] For NIC, Defendants provided the following information:

> The Sheriff made a request for technical assistance from NIC that was twofold. First, to assess policies, procedures, practices, and physical plant of Multnomah County jail facilities for suicide prevention. Second, to assess identification & detection of contraband. NIC's letter acknowledging the request only mentioned the suicide prevention request, and I don't have the precise verb[i]age of the contraband request. NIC has provided information about a consultant for MCSO to use for this assessment, and I understand the process involves getting the consultant engaged and then the review taking place. I do not have a timeline.[9]

---

[5] Piucci Decl., Ex. B, (August 3, 2023 Community Letter from the Sherrif on recent deaths in custody). *Also available* at: http://mcso.us/site/news-media.
[6] Piucci Decl., Ex. D, p 5. ("I observed a small bag of white powder, consistent with that of illicit substances on the decedents grey side table.").
[7] Piucci Decl., Ex C, (August 9, 2023 MCSO Press Release, "Sheriff Morrisey O'Donnell requests independent review of adult in custody death investigations."). *Also available* at: https://flashalert.net/id/MCSO/165593
[8] Piucci Decl., Ex. E, p 7. (Email thread between counsel for Plaintiff and Defendants).
[9] *Id.*

Page 3 -   **MOTION TO REOPEN DISCOVERY**

PIUCCI LAW
900 SW 13th Ave. Suite 200
Portland, Oregon 97205
Telephone: (503) 228-7385
Fax: (503) 228-2571

Plaintiff is therefore moving to reopen discovery and is seeking an Order that Defendants produce the following:

1. The medical examiner report and toxicology report for each death referenced in the Sheriff's August 3rd, 2023 "Community Letter," sufficient to determine whether each death involved the use of drugs obtained while in custody.

2. For the July 19th and August 1st deaths of Josiah Pierce and Clemente Pineda – the deaths after which the sheriff announced "some of the deaths may be drug-related" – all investigative materials related to the deaths: the MCSO investigation, the Multnomah County District Attorney's Office ("MCDA") investigation,[10] the medical examiner investigation, and the review of any investigation by the Oregon State Police.

3. The Multnomah County Health Department Internal Quality Improvement Death Reviews for the Pierce and Pineda deaths.

4. The reports, assessments, and recommendations of NIC or the NIC-recommended consultant, relating to the Sheriff's request for technical assistance regarding contraband detection and identification.[11]

Defendants have objected to reopening discovery.

### III.   LEGAL STANDARDS

#### a.  Relevance Threshold under FRCP 26(b)(1)

A party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). This phrase, like its predecessor "relevant to the subject matter involved in the pending action" has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351

---

[10] Per ORS 146.100(1), the death investigation "shall be under the direction of the district medical examiner and the district attorney[.]" Plaintiff is uncertain as to the extent to which the MCDA investigation will differ from the MCSO and medical examiner investigations.

[11] Plaintiff is not requesting production of the NIC investigation into suicide prevention, as that is not relevant to this case.

Page 4 -   **MOTION TO REOPEN DISCOVERY**

PIUCCI LAW
900 SW 13th Ave. Suite 200
Portland, Oregon 97205
Telephone: (503) 228-7385
Fax: (503) 228-2571

(1978). *See also,* generally, 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2007 (2d ed. 1987).

### b. Rule 16 Factors for Reopening Discovery

District courts consider the following six factors when ruling on a motion to amend a Rule 16 scheduling order to reopen discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017).

### a. *Monell* Municipal Liability

To prove municipal liability through a *Monell* claim, a plaintiff must show "that (1) she was deprived of a constitutional right, (2) the entity had a policy or custom evincing its deliberate indifference to the prisoner's constitutional right, and (3) the policy or custom was the moving force behind the constitutional violation." *Fricano v. Lane Cty.*, 2018 WL 2770643, at *9 (D. Or. June 18, 2018) (citing *Burke v. Cty. of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009)).

### b. Relevance of Post-Event Evidence under *Monell*

Unlike most other claims, "post-event evidence" is admissible to prove the existence of a municipal policy or custom under *Monell*. Such evidence – even long after an incident – is not only relevant, but "highly probative" for this purpose. *Henry v. County of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997), as amended 137 F.3d 1372 (9th Cir. 1998).[12] *See also*: *Johnson v. Corizon Health, Inc*, 2015 WL1549257, at *12. The *Henry* court explained:

---

[12] These *Henry* evidence concerned declarations filed at Summary Judgment testifying to occurrences approximately three and ten months after the plaintiff's incident, respectively.

Page 5 -   **MOTION TO REOPEN DISCOVERY**

PIUCCI LAW
900 SW 13th Ave. Suite 200
Portland, Oregon 97205
Telephone: (503) 228-7385
Fax: (503) 228-2571

When a county continues to turn a blind eye to severe violations of inmates' constitutional rights--despite having received notice of such violations--a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference. *Henry,* 137 F.3d 1372.

## IV. ARGUMENT

The issue on which the prospective discovery bears is the liability of Multnomah County under *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

Under *Monell*, the County may be liable under § 1983 if its policies, customs, or practices caused Forrest's death through deliberate indifference to either (1) his eighth amendment right to adequate medical care, 436 U.S. 658, 694 (1978), or (2) his eighth amendment right to "reasonable safety." *Helling v McKinney*, 509 U.S. 25, 33 (1993). Unfettered access to drugs within a jail or prison is sufficiently serious to violate this right to reasonable safety. *Zakora* v. *Chrisman*, 44 F.4th 452 (6th Cir. 2022), *cert. denied* 599 U.S. __ (2023).

The discovery sought is likely to lead to post-event evidence of the following municipal policies or customs alleged in Plaintiff's First Amended Complaint:

111(a):  Failing to keep drugs including heroin and methamphetamine out of Multnomah County Jails;

111(b):  Failing to enforce policies and procedure that would prevent heroin, methamphetamine, and other controlled substances from being accessible to inmates;

111(k):  Failing to adequately train medical staff to recognize the signs and symptoms of heroin and methamphetamine overdoses;

111(j):  Failing to adequately train correctional staff to recognize the signs and symptoms of heroin and methamphetamine overdoses;

111(m):  Failing to adequately train medical staff in the administration of Narcan;

111(p):  After an inmate death by overdose, failing to take appropriate measures to prevent future inmate deaths by overdose[.]

Page 6 -   **MOTION TO REOPEN DISCOVERY**

PIUCCI LAW
900 SW 13th Ave. Suite 200
Portland, Oregon 97205
Telephone: (503) 228-7385
Fax: (503) 228-2571

### a. The Rule 16 Factors Weigh Heavily in Favor of Reopening Discovery

Plaintiffs meet the good cause standard set forth under Rule 16. The factors are applied as follows:

1. <u>Trial is not imminent.</u>

Conversely, it is not even scheduled. This factor weighs in favor of reopening discovery.

2. <u>The request is opposed.</u>

However, opposition alone cannot serve as the basis to deny this motion. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (Rule 16 good cause inquiry focuses on the reason for seeking the amendment to the scheduling order).

3. <u>Defendants would not be prejudiced.</u>

Counsel for defendants stated on the record that producing the requested documents would neither be difficult nor expensive.[13] Defendants are represented by in-house counsel, and production of any document would likely be accomplished using limited staff time. Should a limited FRCP30(b)(6) deposition become warranted, the witness would be a county employee, prepared by in-house counsel. Further, the discovery of evidence unfavorable to Defendants is not prejudice. This factor weighs in favor of reopening discovery.

4. <u>Plaintiff was Diligent in Obtaining Discovery.</u>

Plaintiff has conducted 25 depositions of Defendants and employees of Multnomah County. Defendants have produced over 21,000 pages of documents as well as conducting eleven additional depositions.[14] Plaintiff was exceedingly diligent in obtaining discovery that existed prior to the close of discovery.

---

[13] ECF-79.
[14] Piucci Decl., ¶ 4.

Page 7 - **MOTION TO REOPEN DISCOVERY**

**PIUCCI LAW**
**900 SW 13th Ave. Suite 200**
**Portland, Oregon 97205**
**Telephone: (503) 228-7385**
**Fax: (503) 228-2571**

This factor weighs in favor of reopening discovery.

        5.    <u>At the time discovery closed, the need for this discovery was not foreseeable.</u>

It was not possible to foresee the need to conduct discovery into deaths which had not yet occurred. It was also not possible to know that the Sheriff would request an independent review of MCSO's policies and practices related to contraband detection – that is, keeping drugs out of the jails – an issue which is central to Plaintiff's *Monell* claim.

As such, this factor weighs heavily in favor of reopening discovery.

        6.    <u>The discovery is likely to lead to relevant evidence.</u>

The requested discovery is likely to lead to "highly probative" post-event evidence of one of the six above-listed municipal policies or customs alleged in plaintiff's *Monell* claim. *Henry*, 137 F.3d 1372.

More broadly, the evidence will be relevant to municipal policies or customs of allowing AICs unfettered access to drugs, failing to interdict drugs, failing to train staff regarding drug intoxication and overdose, failing to learn from prior overdose deaths, and – potentially – failure to administer Narcan to an overdosing inmate.

Each category of discovery that Plaintiff seeks is individually addressed below.

> **i.    The medical examiner report and toxicology report for each death referenced in the Sheriff's August 3rd, 2023 "Community Letter," sufficient to determine whether each death involved the use of drugs obtained while in custody.**

This request is likely to reveal that one or more in-custody death involved the use of drugs that were obtained within the jail. The Sheriff has admitted that "[e]arly indications suggest some of the deaths may be drug-related."[15] The medical examiner reports and

---

[15] Piucci Decl., Ex. B, (August 3, 2023 Community Letter from the Sherrif on recent deaths in custody). *Also available* at: http://mcso.us/site/news-media.

Page 8 - **MOTION TO REOPEN DISCOVERY**

**PIUCCI LAW**
**900 SW 13th Ave. Suite 200**
**Portland, Oregon 97205**
**Telephone: (503) 228-7385**
**Fax: (503) 228-2571**

toxicological reports will confirm which deaths were in fact caused by drugs, listing a specific cause of death.

However, the relevance of the medical examiner reports does not end with the cause of death. It also includes an investigative report, which may reveal other relevant evidence. Indeed, for the June 16th, 2023 death – where the cause of death was asphyxia due to ligature hanging – the report (which the county has produced as it was publicly released) revealed that drugs were present within the deceased AIC's cell. The investigator wrote, "I observed a small bag of white powder, consistent with that of illicit substances on the decedents grey side table."[16] As such, even the reports regarding deaths not involving drugs are likely to reveal relevant evidence.

Further, Defendants have made the deaths relevant to refute the section of their Motion for Summary Judgment titled "Multnomah County's Low Jail Mortality Rate."[17]

>    ii. **For the July 19th and August 1st deaths of Josiah Pierce and Clemente Pineda – the deaths after which the sheriff announced "some of the deaths may be drug-related" – all investigative materials related to the deaths: the MCSO investigation, the MCDA investigation, the medical examiner investigation, and the review of any investigation by the Oregon State Police.**

This request is likely to reveal the extent of drug infiltration into Multnomah County jails and the extent of AICs' access to such drugs, which is directly relevant to plaintiff's *Monell* allegations of a policy or custom of failing to keep drugs out of jails and allowing AICs unfettered access to drugs.

As an example, the MCSO Special Investigations Unit conducted the investigation into Mr. Forrest's death. The investigation included interviews with AICs and staff following the death, as well as a comprehensive report on the drug-smuggling scheme that was successfully

---

[16] Piucci Decl., Ex. D, p 5.
[17] ECF-59, p. 13.

Page 9 -    **MOTION TO REOPEN DISCOVERY**

**PIUCCI LAW**
**900 SW 13th Ave. Suite 200**
**Portland, Oregon 97205**
**Telephone: (503) 228-7385**
**Fax: (503) 228-2571**

operating at the time of Mr. Forrest's death. The SIU summary specifically addressed the extent of drug infiltration and availability within the jail, ultimately concluding, "there is not enough evidence to know who gave For[r]est the drugs that may have killed him because there w[ere] so many people dealing heroin and meth inside the same dorm."[18]

The MCSO investigations into the Pierce and Pineda deaths would likely contain the same categories of information, which would bear directly on the alleged municipal custom of failing to keep drugs out of jails and allowing AICs unfettered access to drugs. The MCDA and OSP reviews are likely to provide additional analysis and critique of MCSO's policies and customs which led to the availability of drugs within the jail.

### iii. The MCHD Internal Quality Improvement Death Reviews for the Pierce and Pineda deaths.

An Internal Quality Improvement Death Review is a formalized process that MCHD Corrections Health Medical Director Michael Seale conducts following every in-custody death. It consists of a contemporaneous chart review of the AIC's preexisting conditions, care received during incarceration, and the documentation made at the time of the death event. Then, after receipt of the medical examiner report and the toxicology report, the case is reviewed again to assess the initial assessment.[19]

This request is tailored to the second eighth amendment right at issue in plaintiff's *Monell* claim: the right to adequate medical care. *Monell v.* 436 U.S. 658, 694 (1978). Within that right, the alleged unconstitutional policies and customs are paragraph 111(k) and (m) – failing to train medical staff regarding the signs and symptoms of drug overdoses and failing to train medical staff in the administration of Narcan.

---

[18] Piucci Decl., Ex. 3, (Forrest SIU Investigation Summary Report).
[19] Piucci Decl, Ex. A., Deposition of Michael Seale, MD at 52:20-54:1.

Page 10 - **MOTION TO REOPEN DISCOVERY**

**PIUCCI LAW**
900 SW 13th Ave. Suite 200
Portland, Oregon 97205
Telephone: (503) 228-7385
Fax: (503) 228-2571

Plaintiff does not yet know whether MCHD provided inadequate medical care to either of these deceased inmates. However, the Internal Quality Improvement Death Review is the most direct way to determining whether relevant evidence exists – i.e. whether nurses failed to give Narcan – without requiring production of all medical records and surveillance video related to the events. The Internal Quality Improvement Death Review for Mr. Forrest, for example, is 12 pages.[20]

> iv. **The reports, assessments, and recommendations of NIC or the NIC-recommended consultant, relating to the Sheriff's request for technical assistance regarding contraband detection and identification.**

A professional assessment of MCSO's policies and customs regarding contraband detection – and the failures of those policies at preventing drugs from entering the jail – is extremely likely to lead to relevant evidence concerning Plaintiff's *Monell* claim. The evaluation of MCSO's policies and customs related to contraband detection the extent of drug availability within MCSO jails over a long period of time would be the quintessential "highly probative" post-event evidence of a longstanding custom or practice within MCSO, as alleged in Plaintiff's First Amended Complaint.

The only uncertainty is as to the scope of the assessment itself. Should such an assessment be conducted, though, it would be extraordinarily relevant.

//
//
//
//
//
//

---

[20] Piucci Decl, Ex 103.

Page 11 -  **MOTION TO REOPEN DISCOVERY**

**PIUCCI LAW**
**900 SW 13th Ave. Suite 200**
**Portland, Oregon 97205**
**Telephone: (503) 228-7385**
**Fax: (503) 228-2571**

## V.  CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion to reopen discovery for the limited purposes detailed above.

DATED this September 1, 2023.

By: _____
Joe Piucci, OSB No. 135325
Attorney for Plaintiff
joe@piucci.com

Page 12 -  **MOTION TO REOPEN DISCOVERY**

**PIUCCI LAW**
**900 SW 13th Ave. Suite 200**
**Portland, Oregon 97205**
**Telephone: (503) 228-7385**
**Fax: (503) 228-2571**