IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **THE ESTATE OF RICHARD JASON FORREST**, Van Loo Fiduciary Services, LLC, Personal Representative,<br><br>Plaintiff,<br><br>v.<br><br>**MULTNOMAH COUNTY**, *et al.*,<br><br>Defendants. | Case No. 3:20-cv-1689-AR<br><br>**OPINION AND ORDER** |

Joseph E. Piucci and Stephen V. Piucci, PIUCCI LAW LLC, 900 SW Thirteenth Avenue, Suite 200, Portland, OR 97205; and Drake Aehegma, DRAKE AEHEGMA ATTORNEY AT LAW LLC, PO Box 8404, Portland, OR, 97207. Of Attorneys for Plaintiff.

Jenny M. Madkour, County Attorney; B. Andrew Jones, Deputy County Attorney; and Veronica R. Rodriguez, Assistant County Attorney, MULTNOMAH COUNTY ATTORNEY'S OFFICE, 501 SE Hawthorne Blvd., Suite 500, Portland, OR 97214. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

United States Magistrate Judge Jeffrey Armistead issued Findings and Recommendation in this case on July 11, 2025. This matter involves the death on July 15, 2015, by opioid overdose, of Richard Jason Forrest ("Forrest") while in the custody of Defendant Multnomah

County at Inverness Jail ("Inverness"). Judge Armistead recommended that this Court grant in part and deny in part Defendants' motion for partial summary judgment.[1]

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3). For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Magistrates Act "does not preclude further review by the district judge[] *sua sponte* . . . under a de novo or any other standard." *Thomas*, 474 U.S. at 154.

Indeed, the Advisory Committee Notes to Rule 72(b) of the Federal Rules of Civil Procedure recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record." The Court follows this guidance and reviews the portions of the Findings and Recommendation to which no party

---

[1] Defendants conceded that their motion for summary judgment with respect to Plaintiff's medical negligence claim should be denied.

objected for clear error. The Court finds no such error and adopts those portions, including Judge Armistead's recitation of the factual background of this case.

In Plaintiff's objections, Plaintiff argues that Judge Armistead erred in recommending that the Court deny Plaintiff's *Monell* claim against Multnomah County based on the alleged longstanding and widespread custom or practice of allowing "unfettered" access to drugs in Plaintiff's jail dormitory. Defendants object to all recommendations not to grant summary judgment on this issue. The Court reviews de novo these aspects of Defendants' motion.

## DISCUSSION

### A. *Monell* Claim Based on Access to Drugs

Plaintiff argues that Multnomah County is liable under *Monell* because it had a "policy" based on inaction and omission of allowing "unfettered" access to drugs in Plaintiff's jail dorm. Plaintiff does not argue that the County deliberately allowed these drugs into the jail, but instead contends deliberate indifference through obviousness—asserting constructive knowledge.

**1. Legal Standards**

A municipality or other local government is a "person" who may be sued under 42 U.S.C. § 1983, *Duarte v. City of Stockton*, 60 F.4th 566, 568 (9th Cir. 2023), but it may not be held liable "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In other words, § 1983 does not allow recovery for the actions of a local government's employees under a theory of respondeat superior liability. *Id.* at 691. Instead, a plaintiff must demonstrate that a municipality had a "policy" that was the "moving force" behind a violation of the plaintiff's constitutional rights. *See Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013); *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

The Ninth Circuit recognizes that a local government body can be held liable under § 1983 for "policies" of inaction or omission. In this path to liability, a municipality can be held responsible "for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation." *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1185 (9th Cir. 2002), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016); *see also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012); *Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020). A plaintiff who alleges a policy of inaction, however, must establish that such a policy amounts to "deliberate indifference" to the plaintiff's constitutional rights. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997); *Park*, 952 F.3d at 1141.

In a *Monell* claim, deliberate indifference may "exist[] when the need for more or different action is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Hyun Ju Park*, 952 F.3d at 1141 (9th Cir. 2020) (cleaned up). "This requires a showing that the facts available to the [municipality] put it on actual or constructive notice that its practices . . . were substantially certain to result in the violation of the constitutional rights of its citizens." *Sandoval v. County of San Diego*, 985 F.3d 657, 682 (9th Cir. 2021) (cleaned up). Deliberate indifference ordinarily is shown through "a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Park*, 952 F.3d at 1142. Deliberate indifference also may be shown if a policy is "so facially deficient that any reasonable policymaker would recognize the need to take

action." *Id.* at 1141. "Whether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question." *Gibson*, 290 F.3d at 1194-95.

### 2. Analysis

Plaintiff alleges a policy of inaction. Plaintiff contends that there are factual disputes about whether Multnomah County was on actual or constructive notice that its "practice" of failing to keep drugs out of Forrest's dormitory was substantially certain to result in a violation of a prisoner's constitutional rights. Plaintiff relies on the following evidence: (1) a drug smuggling operation had been ongoing for three months before Forrest's death; (2) Multnomah County failed to have surveillance cameras installed at the "drop point" of the drugs, despite knowing that this point was accessible both to prisoners and the public; (3) the drug access and use within the dormitory was widespread, well known, and obvious; (4) prisoners talked openly on monitored telephones about the drug situation at the dormitory; (5) the difference between when the smuggled drugs were heroin (which made prisoners sleepy) and when they were meth (which kept prisoners awake and made them agitated) were obvious and known by the deputies; (6) deputies regularly removed prisoners from the dormitory's work crew because they were high on drugs; (7) deputies specifically spoke to prisoners about their drug use, including one deputy who warned that a prisoner needed to ingest his drugs in the bathroom so the deputy would not see that and another who commented that a prisoner was high and then walked away; (8) the Dorm Nine activity diary from May 24 to June 10 (when Forrest arrived) includes many entries cataloguing prisoners' use of contraband, including the discovery of a syringe in a toilet stall "shoe base" (where Forrest's syringe was later located); (9) Inverness Facility Commander Kurtiss Morrison acknowledge that the amount of contraband in Dorm Nine was "unacceptable," "potentially dangerous, and indicated smuggling of those items; (10) throughout the remainder of

PAGE 5 – OPINION AND ORDER

June the contraband problem continued, with one deputy even noting that "[s]omething is going on in this dorm"; (11) by July the drug problem was so bad that four inmates were asked to submit to urinalysis, and three declined, which Plaintiff contends equates to a positive test; (12) a bunk search of those four inmates uncovered a "crack pipe" and two syringes; (13) deputies conducted one full dormitory search on July 3rd but otherwise failed to do anything to discover drugs or how they were being smuggled into the facility; (14) the problem continued after this search, with inmates testing positive for drugs and continuing to have contraband, like cigarettes; (15) the day before Forrest's death, a nurse saw a disheveled woman digging in the bushes at the drop point, which led to the discovery of more than five buried syringes, yet the jail did nothing further to investigate; and (16) when Multnomah County finally performed an investigation into the drug smuggling after Forrest's death, the ultimate conclusion was that they could not identify "who gave For[r]est the heroin that may have killed him because there [were] so many people dealing heroin and meth inside the same dorm."

Defendants argue that Plaintiff fails to show a "policy" based on "custom or practice" relating to allowing drugs into Dorm Nine because Plaintiff fails to show that any such policy was "so persistent and widespread as to practically have the force of law." ECF 119 at 3 (quoting *Endy v. County of Los Angeles*, 975 F.3d 757, 769 (9th Cir. 2020)). Defendants also argue that Plaintiff fails to show a pattern of earlier violations of constitutional rights, instead relying only on Forrest's death. Defendants also contend that because some deputies performed cell searches and disciplined inmates using contraband, Plaintiff cannot show a disputed issue of fact that Multnomah County had a widespread practice of allowing drugs into Dorm Nine.

As discussed, an alleged policy can result through omission. *Tsao*, 698 F.3d at 1143. "A policy of inaction or omission may be based on failure to implement procedural safeguards to

prevent constitutional violations." *Id.* To support this type of alleged policy, a plaintiff must show a constitutional violation, deliberate indifference, and that the "policy caused the violation, 'in the sense that the [municipality] could have prevented the violation with an appropriate policy.'" *Id.* (quoting *Gibson*, 290 F.3d at 1194 (alteration in *Tsao*).

This type of policy, through omission, is different from a policy of "commission." *Tsao*, 698 F.3d at 1144. The Ninth Circuit has analyzed a policy of inaction without considering the widespread and prevalent requirement. *See id.* at 1144-45 (concluding that the plaintiff failed to claim a policy of *commission*, in part because the alleged policy was not so "widespread and prevalent," but then reviewing whether the plaintiff had alleged a policy of *omission* by analyzing deliberate indifference); *see also Gibson*, 290 F.3d at 1191, 1194-96 (evaluating for a direct policy whether the evidence supported that the county "made a practice" of the affirmative policy, but evaluating the policy of omission without considering that factor and solely looking at deliberate indifference and causation). In other words, "[i]n inaction cases, the plaintiff must show, first, that [the] policy amounts to deliberate indifference to the plaintiff's constitutional right." *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (alteration in original, quotation marks omitted). "This requires showing that the defendant was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.* (quotation marks omitted). "Second, the plaintiff must show that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy." *Id.* (quotation marks omitted).

Plaintiff raises a triable issue about whether Multnomah County had a policy of inaction with respect to the access to drugs in Dormitory Nine. Plaintiff's death by illicit drugs is the constitutional violation. Regarding deliberate indifference, that can be shown through

PAGE 7 – OPINION AND ORDER

obviousness. Construing the record in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the record supports the conclusion that the need to address the drug problem in Dormitory Nine was obvious. For months deputies and inmates knew that smuggling into the dormitory was rampant and that drug use in the dormitory was prevalent. Multnomah County, therefore, was on actual or constructive notice of the problem. This is not one of the rare cases where the issue of deliberative indifference should not go to the jury.

Additionally, because Plaintiff contends that Forrest died due to a drug overdose from drugs smuggled into Dormitory Nine, Plaintiff raises an issue of fact regarding causation. Drawing all reasonable inferences in Plaintiff's favor, a reasonable jury could conclude that Plaintiff's "injury would have been avoided had the County had a policy directing" deputies to affirmatively address a pervasive contraband smuggling operation. *See Gibson*, 290 F.3d at 1196 (quotation marks omitted). Indeed, after Forrest died, the jail investigated and stopped that drug smuggling pipeline.

Finally, if a widespread custom is required, viewing the evidence in the light most favorable to Plaintiff shows that for at least three months there was a policy of inaction with respect to determining the cause and scope of the smuggling problem and stopping the prevalent drug problem in Dormitory Nine. Multnomah County also was aware of the dangers of drugs because there had been many drug overdoses in Multnomah County facilities, including overdoses resulting in death. *See* ECF 90 at 13 (describing other overdose incidents in Multnomah County jails before Forrest's). This is sufficient to create an issue of fact on whether the custom was widespread and prevalent. *See, e.g.*, *Buchanan v. City of Los Angeles*, 2025 WL 2020002, at *5 (C.D. Cal. June 12, 2025) (finding a custom-based policy sufficiently widespread when the plaintiff alleged "five months of continuous, repeated verbal and written

requests for medical care for issues that should have been apparent to anyone, including changing his surgical dressing"); *Wettstein v. County of Riverside*, 2020 WL 2199005, at *5 (C.D. Cal. Jan. 22, 2020) ("While there is no per se rule for the amount of unconstitutional incidents required to establish a custom under *Monell*, 'one or two incidents ordinarily cannot establish a . . . custom, while more incidents may permit the inference of a [custom], taking into account their similarity, their timing, and subsequent actions by the municipality.'" (alterations in *Wettstein*) (quoting *J.M. by & Through Rodriguez v. County of Stanislaus*, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018)).

As explained by the Northern District of California in rejecting a motion to dismiss similar claims:

> Plaintiffs have set forth specific factual allegations that plausibly entitle them to relief on a claim of unconstitutional custom or policy. They allege that the Jail lacks the drug screening, detection, and search policy necessary to ensure the safety of people incarcerated there. Whether framed as a policy of inaction or inadequate action, the allegations plausibly support an inference of deliberate indifference. *See Long*, 442 F.3d at 1189-90 ("This court consistently has found that a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even when the county has other general policies in place."). The allegation that, since 2014, ten people have died from obtaining drugs within the Jail plausibly supports an inference that the County "was on actual or constructive notice that its omission would likely result in a constitutional violation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012) (cleaned up). Finally, the allegations that a person smuggled drugs into the Jail without detection and that Ms. Anderson died after ingesting fentanyl that she could only have obtained within the Jail plausibly support an inference that the policy was the moving force "in the sense that the municipality could have prevented the violation with an appropriate policy." *Id.* at 1143.

*Anderson v. County of Alameda*, 2022 WL 2355536, at *2 (N.D. Cal. June 30, 2022); *see also Saxton v. County of Sonoma*, 2025 WL 1697157, at *8 (N.D. Cal. June 17, 2025), *motion to certify appeal denied*, 2025 WL 1918841 (N.D. Cal. July 11, 2025) (denying the defendants'

summary judgment motion on the *Monell* claim because the record, viewed in the light most favorable to the plaintiff, showed that prison staff "were aware of the security risks flowing from the infiltration of contraband into [Sonoma County Main Adult Detention Facility], and of the particular lethal danger posed by fentanyl" and thus "there are triable issues of fact as to whether the County's policies of inaction allowed fentanyl to enter the jail and cause Marcotte's death").

The Court notes that drugs in prisons and jails is commonplace, and a municipality cannot be held potentially liable every time drugs enter a prison. *See, e.g.*, *Saxton*, 2025 WL 1697157, at *9 ("The Court is mindful of the fact that smuggling of contraband, including drugs, into prisons and jails is an endemic problem. The Court has concluded that plaintiffs have viable constitutional claims based on the particular facts of this case, and the Court disagrees with defendants' assertion that this is a run-of-the-mill drug-overdose case."). But here, Plaintiff has shown more than simply drugs being present in a prison—the record shows that drug use by prisoners was widespread (one inmate estimated 40 out of the 60 inmates in Dormitory Nine were using drugs) and that the municipality was aware of the problem. *See id.* Thus, the Court denies Defendants' motion for summary judgment as against the alleged policy of inaction allowing excessive drug use in Dormitory Nine.

**B. Section 1983 Claim against Nurses Camille Valberg and Koh Metea**

**1. Legal Standards**

"A violation of the Eighth Amendment occurs when prison officials are deliberately indifferent to a prisoner's medical needs." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). "To establish an Eighth Amendment violation, a prisoner must satisfy both the objective and subjective components of a two-part test." *Id.* (quotation marks omitted). First, the alleged deprivation must be "sufficiently serious" under an objective standard. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The objective question of whether a

prison officer's actions have exposed an inmate to a substantial risk of serious harm is a question of fact, and as such must be decided by a jury if there is any room for doubt." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075-76 (9th Cir. 2013).

Second, the prisoner must show that prison officials acted with deliberate indifference, meaning an official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Toguchi*, 391 F.3d at 1057 (describing the two-part test). "This 'subjective approach' focuses only 'on what a defendant's mental attitude actually was.'" *Toguchi* 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 839). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)).

### 2. Analysis

The only issue before the Court relating to this claim is Defendants' objection to the denial of summary judgment on Plaintiff's claim that Nurses Valberg and Metea violated Forrest's Eighth Amendment rights. Defendants argue that Nurses Valberg and Wheeler were not deliberately indifferent to Forrest's medical need and thus summary judgment should be granted in their favor on Plaintiff's Eighth Amendment claim against Valberg and Wheeler. Plaintiffs argue that there is an issue of fact on the subjective prong based on obviousness.

The Ninth Circuit has emphasized "the significance of the obviousness of a risk in a deliberate indifference calculus." *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015).

> Our cases support the proposition that obviousness of a risk may be used to prove subjective knowledge . . . . *See Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013) (requiring a plaintiff to demonstrate "that the risk was obvious or provide other circumstantial or direct evidence that the prison officials were aware of the substantial risk" to defeat summary judgment); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)

>    (noting that subjective awareness "may be satisfied if the inmate shows that the risk posed by the deprivation is obvious").

*Id.*

The Supreme Court, however, has cautioned that the obviousness doctrine does not "compel[] the conclusion . . . that a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it." *Farmer*, 511 U.S. at 841-42. Instead, it "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (citation omitted).

Although the Court adopts the facts detailed in the Findings and Recommendation, the Court will summarize the key facts relevant to this portion of Defendants' motion. Forrest was known to have problems with asthma. At the time of the incident, he was holding his inhaler and reported he was having trouble breathing. The deputy made a radio call requesting a nurse for an inmate who was having breathing difficulties. The deputy then requested that the nurse bring an inhaler.

Nurse Valberg appeared and reported that she was unable to help Forrest, and a correctional officer called for backup. Forrest's breathing was shallow and he could not verbally respond. One minute later Nurse Matea arrived and began assisting Forrest. His breathing was increasingly slow and shallow and his complexion was turning grey. One minute later he began to go limp and the nurses placed an oxygen mask on Forrest and tried to administer albuterol. One minute later the correctional officer called 911 and conveyed that Forrest had been having an asthma attack and passed out. One minute after that, so four minutes after Nurse Valberg arrived and three minutes after Nurse Matea arrived, Forrest was unresponsive and not breathing.

Deputies began chest compressions and medical staff attempted external ventilation through an "Ambu" bag-mask (artificial manual breathing unit). Paramedics arrived 11 minutes later. At some point before they arrived the possibility that Forrest had overdosed was raised.[2] It is undisputed that just before the paramedics arrived, the window for successful administration of naloxone had closed. Four minutes after arriving, the paramedics administered intramuscular naloxone.

Plaintiff argues that there is an issue of fact whether Forrest's condition was an opioid overdose such that Nurse Valberg and Nurse Matea should have administered Naloxone instead of treating Forrest as if he had an asthma attack. Plaintiff provides evidence that Forrest presented as inconsistent with an asthma attack: (1) his breathing was slow and shallow (generally consistent with an opioid overdose) versus rapid and shallow (generally consistent with an asthma attack) in the few minutes he was breathing in the presence of the nurses; (2) his breathing was not labored; (3) he was foaming at the mouth when he was on the floor, which is consistent with an overdose; and (4) his condition worsened rapidly as opposed to the generally slower progression of an asthma attack. This evidence, however, must be considered in the context in which the nurses treated Plaintiff, with regard to the standard for deliberate indifference. Many of Plaintiff' symptoms were consistent with an asthma attack. These included: (1) turning grey; (2) shortness of breath; (3) difficulty speaking; and (4) decreased level or loss of consciousness.

The nurses were called to assist in what was identified as an asthma attack, for an inmate literally holding an inhaler, who had asked for another inhaler, who was trying to use an inhaler,

---

[2] As described by Judge Armistead, it is unclear who raised the issue, a deputy or an inmate, and when it was raised.

PAGE 13 – OPINION AND ORDER

and who did not report any drug use. They did not have knowledge of the drug problems in Plaintiff's dorm. Their frame of mind was to treat an asthma attack. Within three minutes of Nurse Valberg arriving and two minutes of Nurse Matea's arrival, Forrest lost consciousness and the nurses applied an oxygen mask. One minute later his breathing and heartbeat stopped. The nurses had less than five minutes to evaluate Plaintiff before he went into cardiac and respiratory arrest.

Plaintiff's argument that it was obvious that Forrest was suffering from an overdose such that Nurses Valberg and Matea can be imputed with subjective knowledge of that substantial risk to Forrest's health and safety pushes the obviousness doctrine too far. The Ninth Circuit has recognized that "deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." *Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003). The Ninth Circuit also has concluded that failing to provide life saving measures to an unconscious inmate after a suicide attempt, *Lemire*, 726 F.3d at 1083, and failing to "promptly summon paramedics" when an inmate was "unresponsive and having a seizure," *Sandoval*, 985 F.3d at 661-62, met this standard.

Nurses Valberg and Matea, however, provided life saving measures and ensured that paramedics were promptly called. The sole question is whether their misdiagnosis in the first three minutes that Forrest was suffering from an asthma attack instead of an overdose was so obviously incorrect that it rises to the level of deliberate indifference. The Court finds that it does not.

The Ninth Circuit has rejected claims, both on the merits and on obviousness, when a plaintiff argued, among other things, that a prison doctor was deliberately indifferent by failing

PAGE 14 – OPINION AND ORDER

to conduct a differential diagnosis and realizing that the inmate was overdosing. *See Toguchi*, 391 F.3d at 1508 n.4, 1060. The Ninth Circuit explained:

> Dr. Chung did not believe that Keane had access to contraband while in prison, and therefore did not consider that Keane's bizarre behavior could be the result of a drug overdose. It does not matter whether Dr. Chung's assumptions and conclusions were reasonable. Rather, so long as she was not subjectively aware of the risk that Keane could be suffering from a drug overdose, and disregarded that risk, she was not deliberately indifferent.

*Id.* at 1060.

The Ninth Circuit also has considered the time involved in evaluating whether a party can be found deliberately indifferent. In *Estate of Cartwright v. City of Concord, California*, 856 F.2d 1437 (9th Cir. 1988), the Ninth Circuit emphasized that the challenged actions of the defendants occurred over a "few intervening minutes between discovering Cartwright—cutting him down, checking his vital signs, and giving him aid" and thus "were not negligent, and certainly were not deliberate indifferen[t] to Cartwright's distress." *Id.* at 1438 (quoting *Est. of Cartwright v. City of Concord, Cal.*, 618 F. Supp. 722, 729-30 (N.D. Cal. 1985)). In *Lemire*, the Ninth Circuit affirmed summary judgment in favor of a medical staff member whose challenged conduct took place over three minutes, noting its similarity to the situation in *Cartwright*. *Lemire*, 726 F.3d at 1083.

Under the circumstances of this case, with only a few minutes to treat Forrest and the facts known to Nurses Valberg and Matea, it was not obvious that Forrest was suffering from an overdose instead of an asthma attack. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's second claim for relief.

### C. Failure to Train and Ratification Claims against Multnomah County

Plaintiff did not object to the Findings and Recommendation's rejection of Plaintiff's failure to train and ratification claims based on anything other than the conduct of the two nurses.

PAGE 15 – OPINION AND ORDER

Defendants object to the conclusion that Multnomah County can be held liable for failure to train its nurses and ratification of the nurses' treatment conduct. As discussed above, the Court concludes that Plaintiff has failed to show a triable issue with respect to the nurses' treatment of Forrest. Plaintiff, therefore, fails to show a triable issue on the failure to train claim or ratification claims relating to that underlying conduct. Because those are the only failure to train and ratification claims subject to this Court's review in this case, the Court grants summary judgment on these claims.

### D. Gross Negligence Claim

Plaintiff did not object to the Findings and Recommendation's rejection of Plaintiff's gross negligence claim for all issues except the medical treatment claim and the failure to train on proper use of Narcan. Defendants object that Plaintiff cannot show gross negligence on those claims because there was no underlying violation by the two nurses. The Court has concluded that summary judgment is warranted on the Eighth Amendment claims against the two nurses. Thus, the Court agrees with Defendants that Plaintiff cannot show gross negligence based on that alleged conduct. Because no other issue of gross negligence has been raised for review, the Court grants Defendants' motion for summary judgment on this claim.

### E. Claim for Negligent Hiring and Retention

Plaintiff's negligent hiring and retention claim is based on Multnomah County's hiring of Nurse Valberg. The Court agrees with the Findings and Recommendation that Plaintiff raises a triable issue with respect to whether Nurse Valberg's hiring and retention created a foreseeable risk of injury and adopts that portion of the Findings and Recommendation. Because the Court has concluded that there is no triable issue of fact regarding whether Nurse Valberg's conduct violated Forrest's constitutional rights, however, Plaintiff fails to show a triable issue of fact on

causation with respect to her negligent hiring and retention claim. Thus, the Court grants summary judgment on this claim.

## CONCLUSION

The Court ADOPTS IN PART Judge Armistead's Findings and Recommendation, ECF 114. The Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment, ECF 59. The Court denies summary judgment with respect to Plaintiff's *Monell* (Claim 1) and negligence (Claim 4) claims based on the conduct of inaction in allowing drug access (¶ 111(a)-(b); ¶ 132(b)-(i), (m), (n), (s), (t)). The Court also denies summary judgment on Plaintiff's medical negligence claim (¶ 132(o)-(r); ¶ 133(a)-(f)), because Defendants conceded this aspect of their motion. The Court grants summary judgment on the remaining claims asserted by Plaintiff.

**IT IS SO ORDERED.**

DATED this 25th day of November, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge